# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TONY WEEMS,

          *Plaintiff*,

    v.

PATRICIA CUSHWA, Commissioner of the
United States Parole Commission, et al.,

          *Defendants*.

Civil Action No. 1:20-cv-00726 (CJN)

## MEMORANDUM OPINION

Tony Weems pleaded guilty to various criminal offenses in 1991, was sentenced to a period of incarceration of forty-five years to life, and became eligible for parole in 2019. Compl., ECF No. 1 at 21. At his parole hearing, the U.S. Parole Commission denied Weems's parole request and scheduled his rehearing for July 2024. *See generally* Compl. Weems alleges that the Commission violated the *Ex Post Facto* Clause and his due process rights by applying the wrong guidelines. *See generally* Compl.[1] Because the Commission applied the proper guidelines (and did so correctly), the Court grants Defendants' Motion to Dismiss and denies Weems's Motion to Compel.

## I. Background

Prior to its abolishment in 1997, the D.C. Parole Board ("Board") conducted parole hearings for individuals sentenced under the D.C. Code. *Bailey v. Fulwood*, 793 F.3d 127, 130 (D.C. Cir. 2015). Generally, the Board had broad discretion to make parole determinations and

---

[1] Weems also purports to move for summary judgment, *see* Pl.'s Reply Mot. to Defs.' Mot. to Dismiss, ECF No. 29 at 1, but his filing fails to conform in form and substance to a motion under Federal Rule of Civil Procedure 56. The Court therefore construes this submission as Weems's Opposition ("Pl.'s Opp'n") to Defendants' Motion to Dismiss.

"consider[ed] factors such as the inmate's offense, prior history of criminality, personal and social history, . . . [and] institutional experience, . . . when exercising its discretion to authorize parole." *Davis v. Henderson*, 652 A.2d 634, 635 (D.C. 1995).  In 1987, the Board promulgated guidelines (the "1987 Regulations")

> to govern its evaluation of a prisoner's suitability for parole.  [D.C. Mun. Regs. tit. 28, §§ 100 et seq. (1987) (repealed Aug. 5, 2000)].  The 1987 [Regulations] created a point system focused on offender history, offense characteristics, and behavior while in prison.  The resulting point total determined whether parole would be granted.  However, the [Regulations] also allowed the Board to override the point-based determination in unusual circumstances.  In 1991, in an effort to facilitate consistency in . . . application, the Board also issued an unpublished policy guideline that provided definitions of criteria, parameters, and terms used in the 1987 [Regulations].

*Bailey*, 793 F.3d at 130 (citations and quotation marks omitted).  If the Board determined that "unusual circumstances" justified "overrid[ing] the point-based determination," *id.*, it was required to "specify in writing those factors which it used to depart from the strict application of [the Regulations]."  D.C. Mun. Regs. tit. 28, § 204.22 (1987).  For an offender denied parole serving a maximum sentence of five or more years, the Board typically scheduled a rehearing one year after "the last action taken by the Board."  D.C. Mun. Regs. tit. 28, § 103.2 (1985).  But the Board had the authority to "order a parole reconsideration date it determine[d] to be appropriate," *Hall v. Henderson*, 672 A.2d 1047, 1052 (D.C. 1996) (quoting D.C. Mun. Regs. tit. 28, § 104.11)), and could impose a later set-off[2] in cases involving "aggravating factors," such as offenses of conviction "involv[ing] unusual cruelty to victim(s)[.]" D.C. Board of Parole 1992 Policy Guideline § VI.A.2.f.

---

[2] A set-off is the period of time for the offender to remain incarcerated before being reconsidered for parole.

## A.  The Revitalization Act and 2000 Guidelines

On August 5, 1997, Congress enacted the National Capital Revitalization and Self-Government Improvement Act, which abolished the Parole Board and directed the U.S. Parole Commission to conduct parole hearings for D.C. Code offenders "pursuant to the parole laws and regulations of the District of Columbia."  *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68–69 (D.D.C. 2008) (quotation omitted).  In 2000, the Commission promulgated its own parole guidelines (the "2000 Guidelines").  *Id.* at 72.  It initially applied the 2000 Guidelines to any offender who received an initial parole hearing after August 5, 1998, *id.*, but later clarified that the 1987 Regulations continued to apply to offenders, like Weems, who committed D.C. Code offenses between March 4, 1985 and August 4, 1998, *see Bailey*, 793 F.3d at 130–31 (citing 28 C.F.R. § 2.80(*o*)).

## B.  Weems's Parole Hearing

In 1991, Weems pleaded guilty in D.C. Superior Court to charges of second-degree burglary, assault with intent to rape, kidnapping while armed, rape while armed, and robbery for offenses that he committed between April 23, 1989, and August 4, 1989.  Compl. at 2; *see* Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem."), ECF No. 14-1 at 1.  The Court sentenced Weems to a period of incarceration of forty-five years to life.  Compl. at 21; *see generally* Defs.' Mot. Ex. 1 ("Ex. 1"), ECF No. 14-2.[3]

Weems became eligible for parole on September 28, 2019.  *See* Ex. 1 at 4.  Prior to his parole hearing, the Commission determined that Weems had a total grid score of two.  Defs.' Mot. Ex. 2 ("Ex. 2"), ECF No. 14-2 at 11.  Weems was classified as a "fair" risk due to his convictions for crimes involving violence and a dangerous weapon.  *See id.* at 10.  He also received one point

---

[3] "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, [and] matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997).

(for negative institutional behavior stemming from a fight with other inmates) that was negated by a point he received for program achievement. *Id.* at 10–11.

Weems's parole hearing was held on July 9, 2019. Ex. 2 at 18; Compl. at 21. The Examiner considered Weems "an untreated sex offender with a demonstrated pattern of predatory sexual and physical violence toward women" whose "grid score greatly underestimate[d his] overall risk" to the community if he were released on parole. Ex. 2 at 17. Although offenders with a grid score of two are normally paroled "at the initial hearing with the highest level of supervision required," *id.* at 11, the Examiner recommended that parole be denied and that Weems be reconsidered "in July 2024 after the service of an additional 60 months." *Id.* at 17. The Commission adopted this recommendation in its Notice of Action, informing Weems that

> [a]fter consideration of all factors and information presented, at this time, a decision to deny parole despite the guideline to grant parole and to exceed the normal rehearing schedule is warranted because the [Commission] finds there is a reasonable probability that you would not obey the law if released and your release would endanger public safety. You are a more serious risk than shown by your point score because your grid score greatly underestimates your overall risk. Specifically, your overall offense behavior is highly aggravated because it was committed over a four month period and involved at least four female victims [into whose homes] you broke into . . . at night and burglarized, robbed, raped, sodomized, and assaulted . . . multiple times each . . . . Any one of these crimes alone could have resulted in your initial grid score of 2. Based on the fact your base offenses involve[] four brutal attacks, the [Commission] concludes your overall risk is not adequately captured by the grid score. Also, the [Commission] find the facts that at least two of the Rape/Robbery/Assaults were committed in the presence of young children and one of the victims was raped, kidnapped, robbed, returned home, and raped again, . . . demonstrates your crimes involved unusual cruelty to the victims, including physical, mental and emotional abuse beyond the degree needed to sustain convictions. Lastly, the [Commission] finds you require additional programming to remain crime-free in the community. Specifically, your base offense behavior involves a predatory pattern of sexual and physical violence toward women[, and] you have not participated in any meaningful programming that targets the underlying causes of your offense behavior and your risk of re-offense . . . . The [Commission] finds the highly aggravating factors described above create a reasonable probability you would not obey the law if released and your current status as an untreated sex offender speaks to your current dangerousness. Lastly, the [Commission] finds your continued incarceration,

beyond the ordinary 12-month rehearing guideline, is necessary to both protect the
public and to allow sufficient time for completion of recommended programming.

Defs.' Mot. Ex. 3 ("Ex. 3"), ECF No. 14-2 at 21.

Weems filed this lawsuit on March 12, 2020, alleging that the decision to deny parole was
improper because the Commission applied the 2000 Guidelines instead of the 1987 Regulations;
because the Commission incorrectly computed his total grid score; and because the five-year set-
off "increased his statutory minimum [sentence] by sixty (60) months." *See generally* Compl.

## II.    Analysis

### A.   *Ex Post Facto* Claim

The *Ex Post Facto* Clause prohibits any state from passing an "ex post facto Law."  U.S.
Const. art. 1, § 9, cl. 3.  The Clause "is aimed at laws that 'retroactively alter the definition of
crimes or increase the punishment for criminal acts.'"  *Cal. Dep't of Corr. v. Morales*, 514 U.S.
499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 31, 43 (1990)).  "In the parole context,
a retroactively applied parole . . . regulation or guideline violates the *Ex Post Facto* Clause if it
'creates a significant risk of prolonging an inmate's incarceration.'"  *Short v. Fulwood*, 742 F.
Supp. 2d 133, 136 (D.D.C. 2010) (quoting *Fletcher v. Reilly*, 433 F.3d 867, 870 (D.C. Cir. 2006)).

Weems asserts that the Commission violated the *Ex Post Facto* Clause by applying the
2000 Guidelines at his parole hearing, thereby "increas[ing] the risk that [he] will be incarcerated
longer" than the 1987 Regulations would allow.  Compl. at 27.  To the extent that Weems argues
that the 2000 Guidelines and 1987 Regulations are "substantially different" such that they create
"a significant risk of prolonging an inmate's incarceration," he is correct.  *See Bailey*, 793 F.3d at
130.  But Weems's claim fails because the Commission actually applied the 1987 Regulations at
his parole hearing.  *See* Ex. 3; *Wellington v. Fulwood*, No. 12-0209, 2013 WL 140254, at *3
(D.D.C. Jan. 11, 2013) (rejecting an *ex post facto* claim where Notices of Action demonstrated that

the Commission properly applied the 1987 Regulations instead of retroactively applying the 2000 Guidelines to prisoner's case).  Weems must therefore demonstrate that the Commission's determinations were impermissible under the 1987 Regulations.

### B.  Point Calculation

Weems argues that the Commission incorrectly calculated his total grid score because (1) it should not have added a point for fighting with other inmates, Compl. at 25; (2) should not have considered the "accountability factor," *id.* at 26; and (3) did not credit him for "[s]uperior [p]rogram[] achievement," *id.* at 24–25.  With respect to the decision to assess a point for "negative institutional behavior," Weems asserts that his 2014 disciplinary infraction did not rise to the level of "negative institutional behavior" as defined by a 1991 Policy Guideline.  Compl. at 22.  But Weems's reliance on that Guideline is misplaced:  Weems committed his offenses in 1989— roughly two years before the Parole Board adopted the 1991 Policy Guideline—so it is inapplicable.  *See Bailey*, 793 F.3d at 127; *cf. Sellman*, 551 F. Supp. 2d at 86.  And the Commission's point allocation was proper under the 1987 Regulations, which permit consideration of "[w]hether the parole candidate has committed serious disciplinary infractions . . . while under confinement for the current offense."  D.C. Mun. Regs. tit. 28, § 204.18(h) (May 1987).

As for Weems's contention that the Commission improperly considered the "accountability factor," the 1987 Regulations treat this factor differently than the 2000 Guidelines:

> [T]he 2000 Guidelines, unlike the 1987 Regulations, explicitly permit the USPC to consider offense accountability when determining whether a candidate is suitable for parole. The 1987 Regulations presume that the minimum sentence imposed by the sentencing court appropriately accounts for a parole candidate's offense severity and accountability and that the parole decision should be limited to consideration of the offender's risk of recidivism and institutional conduct. Under the Guidelines, the USPC can overrule this presumption in "exceptional cases" based on the "gravity of the offense," a factor that the Board purposefully did not consider under the 1987 Regulations.

6

*Sellmon*, 551 F. Supp. 2d at 88.   Here, the Commission reached its conclusions based on its evaluation of Weems's risk of recidivism, not a perceived lack of accountability.   *See generally* Ex. 2; Ex. 3.   In fact, the Commission's findings are devoid of any indication that Weems has not taken accountability for his conduct, let alone reliance on such a conclusion.   *See generally* Ex. 2; Ex. 3.   Weems's assertion that the Commission considered an "accountability factor" is therefore without merit.

The Commission's determination that Weems should participate in sex offender programming was also permissible under the 1987 Regulations, which instruct the Commission to consider whether an inmate's "release is not incompatible with the welfare of society."   D.C. Mun. Regs. tit. 28, § 200.1(c) (May 1987).   Here, the Commission concluded that, in light of the "predatory pattern of sexual and physical violence toward women" involved in Weems's underlying offenses, Weems posed a risk of reoffending and "ha[d] not participated in any meaningful programming that targets the underlying causes of [his] offense behavior and . . . risk of re-offense," Ex. 3 at 22.   This determination was certainly relevant to the assessment of whether Weems's release was "incompatible with the welfare of society."   D.C. Mun. Regs. tit. 28, § 200.1(c) (May 1987).   And, to the extent that Weems argues that he did not receive sufficient credit for the programming in which he *has* participated, that argument must fail because an offender can only receive one point "credit" for program achievement (and Weems received that credit).   *Id.* § 201.18.

### C.  Parole Denial

In addition to his challenges to the point calculation, Weems argues that the Commission should not have denied his parole request.   Compl. at 27.   An offender's *eligibility* for parole does not, of course, guarantee *release* on parole.   *See Bailey*, at 793 F.3d at 133.   And even though

Weems's grid score suggested that parole would be granted, the Commission had the authority to deny parole as long as it explained its reasons for doing so.  *See* 28 D.C. Mun. Regs. § 204.22; *see also Phillips v. Fulwood*, 616 F.3d 577, 582 (D.C. Cir. 2010) (noting that the 2000 Guidelines and 1987 Regulations "permit the [Commission], in 'unusual circumstances,' to depart upward based on a prisoner's risk to society").  Here, the Commission recounted Weems's offenses and deemed them "highly aggravated" because they occurred within a four-month period and were perpetrated against at least four female victims whose homes Weems burglarized and whom he robbed, sodomized, and assaulted.  The Commission surely acted within its authority in denying parole in these circumstances.

### D.  Five-Year Set-Off

Weems next contends that the Commission "increased his statutory minimum [sentence] by sixty (60) months" by setting his rehearing for July 2024.  Compl. at 25.  But Weems mistakes the significance of the five-year set-off.  The Commission does not—and cannot—impose a prison sentence.  *See, e.g., McCleod v. U.S. Parole Comm'n*, 74 F. Supp. 3d 154, 157 (D.D.C. 2014) ("The Parole Commission is not a court, and it cannot impose a criminal sentence."); *see also McCallum v. U.S. Parole Comm'n*, No. 12-CV-0702, 2012 WL 5378964, at *2 (D.D.C. Oct. 31, 2012) (concluding that "[the Commission] neither has imposed a new sentence for petitioner to serve nor has it exercised judicial power as if it were a Superior Court judge" by revoking parole and requiring plaintiff to serve additional time in custody as a sanction for parole violations).  "In granting or denying parole, the Parole Commission does not modify a trial court's sentence, but merely determines whether the individual will serve the sentence inside or outside the prison walls."  *Artez v. Mulcrone*, 673 F.2d 1169, 1170 (10th Cir. 1982) (per curiam) (citations omitted); *see Watson v. U.S. Parole Comm'n*, 869 F. Supp. 2d 145, 149 (D.D.C. 2012) ("The Commission

is not a court; it merely exercises administrative authority over the execution of a sentence."). Furthermore, a one-year set-off is not mandatory, as the applicable regulations "expressly authorize[] the [Parole] Board to disregard the suggested timeframes." *Jones v. Braxton*, 647 A.2d 1116, 1117 (D.C. 1994) (per curiam) (citing 28 D.C. Mun. Regs. §§ 104.2, 104.11); *see Shakir v. Fulwood*, 108 F. Supp. 3d 1, 4 (D.D.C. 2015).   Consistent with these requirements, the Commission determined that Weems should serve the 2019–2024 period of his sentence inside the prison walls.

## E.  Due Process Claim

Weems's final challenge appears to raise a due process claim.  Compl. at 4.  But this claim also fails because "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmate of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7 (1979).  The D.C. Code "provides no substantive limitations on the Board's authority to grant parole which would create a liberty interest." *Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995).  And under the 1987 Regulations, "parole is never '*required* after the Board determines that the necessary prerequisites exist.'" *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (quoting *Bd. of Pardons v. Allen*, 482 U.S. 369, 376 (1987)) (emphasis in original); *McRae v. Hyman*, 667 A.2d 1356, 1361 (D.C. 1995) (concluding that the 1987 Regulations do not give rise to a liberty interest in parole).

## III.    Conclusion

The U.S. Parole Commission properly applied the 1987 Regulations at Weems's parole hearing, justified its decision to deny parole, and was permitted to schedule his rehearing for July 2024.  Defendants' Motion to Dismiss is therefore granted and Weems's Motion to Compel is denied as moot.  An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  August 17, 2021

_____
CARL J. NICHOLS
United States District Judge